UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LISA GAIL PORRAZ, | No. 2:13-cv-1995-KJN |
| Plaintiff, | |
| v. | ORDER |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying plaintiff's applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI, respectively, of the Social Security Act ("Act").[1] In her motion for summary judgment, plaintiff principally contends that the Commissioner erred by finding that plaintiff was not disabled from November 1, 2006, plaintiff's alleged disability onset date, through the date of the final administrative decision. (ECF No. 15.) The Commissioner filed an opposition to plaintiff's motion and a cross-motion for summary judgment. (ECF No. 16.) Thereafter, plaintiff filed a reply brief. (ECF No. 19.)

////

---

[1] This action was initially referred to the undersigned pursuant to E.D. Cal. L.R. 302(c)(15), and both parties voluntarily consented to proceed before a United States Magistrate Judge for all purposes. (ECF Nos. 7, 9.)

1

For the reasons that follow, the court grants plaintiff's motion for summary judgment in part, denies the Commissioner's cross-motion for summary judgment, and remands the case for further proceedings under sentence four of 42 U.S.C. § 405(g).

I. BACKGROUND

Plaintiff was born on May 26, 1963, obtained a GED, and previously worked as a school bus driver.[2] (Administrative Transcript ("AT") 93, 220, 247.) On October 14, 2011, plaintiff applied for DIB, alleging that she was unable to work as of November 1, 2006. (AT 12, 220-23.) On October 21, 2011, plaintiff also applied for SSI, alleging that she was unable to work as of November 1, 2006. (AT 12, 224-32.) On January 11, 2012, the Commissioner determined that plaintiff was not disabled. (AT 12, 142-46.) Upon plaintiff's request for reconsideration, the determination was affirmed on April 17, 2012. (AT 148-52.) Thereafter, plaintiff requested a hearing before an administrative law judge ("ALJ"), which took place on March 5, 2013, and at which plaintiff (represented by counsel) and a Vocational Expert ("VE") testified. (AT 12, 33-57.)

In a decision dated April 19, 2013, the ALJ determined that plaintiff had not been under a disability, as defined in the Act, from November 1, 2006, plaintiff's alleged disability onset date, through the date of the ALJ's decision. (AT 12-26.) The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review on July 22, 2013. (AT 1-6.) Thereafter, plaintiff filed this action in federal district court on September 24, 2013, to obtain judicial review of the Commissioner's final decision. (ECF No. 1.)

II. ISSUES PRESENTED

Plaintiff raises the following issues: (1) whether the ALJ erred in evaluating the medical evidence in the record when making his residual functional capacity ("RFC") determination with respect to plaintiff's mental limitations; (2) whether the ALJ's RFC determination failed to properly account for plaintiff's headaches, which the ALJ determined to be a "severe

---

[2] Because the parties are familiar with the factual background of this case, including plaintiff's medical and mental health history, the court does not exhaustively relate those facts in this order. The facts related to plaintiff's impairments and treatment will be addressed insofar as they are relevant to the issues presented by the parties' respective motions.

impairment" at Step Two; (3) whether the ALJ improperly assigned "little weight" to the opinion of Dr. Sanchez; (4) whether the ALJ made an improper credibility determination with respect to plaintiff's testimony; and (5) whether the ALJ posed an improper hypothetical to the VE at Step Five to determine that there were jobs that existed in significant numbers in the national economy that plaintiff could have performed.

## III.   LEGAL STANDARD

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007) (quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citation omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

## IV.   DISCUSSION

### A.   Summary of the ALJ's Findings

The ALJ evaluated plaintiff's entitlement to DIB and SSI pursuant to the Commissioner's standard five-step analytical framework.[3] At the First Step, the ALJ concluded that plaintiff had

---

[3] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program. 42 U.S.C. §§ 401 et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. §§ 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.

3

not engaged in substantial gainful activity since November 1, 2006, plaintiff's alleged disability onset date. (AT 15.) At Step Two, the ALJ determined that plaintiff had the following severe impairments: "pancreatitis with abdominal pain, kidney stones, headaches, depression, liver disease, and hip pain due to bursitis." (Id. (citations omitted).) However, at Step Three, the ALJ determined that plaintiff did not have an impairment or combination of impairments that meet or medically equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AT 16.)

Before proceeding to Step Four, the ALJ assessed plaintiff's residual functional capacity ("RFC") for the relevant time period as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), except she is limited to: simple, routine, repetitive tasks; low stress work, defined as no more than occasional decisionmaking and no more than occasional work setting changes; no public interaction; no more than occasional coworker interaction.

(AT 17.)

////

////

---

> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

1   At Step Four, the ALJ found that plaintiff was unable to perform any past relevant work.
2   (AT 24.) Finally, at Step Five, the ALJ determined, through the VE's testimony, that considering
3   plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant
4   numbers in the national economy that plaintiff could have performed, specifically, assembler of
5   small products, sewing machine operator, and bottle packer. (AT 25-26, 54-55.)
6   Accordingly, the ALJ concluded that plaintiff had not been under a disability as defined in
7   the Act from November 1, 2006, through the date of the ALJ's decision. (AT 26.)

   B.   Plaintiff's Substantive Challenges to the Commissioner's Determinations

       1.   *ALJ Erred in Evaluating the Medical Evidence in the Record Concerning Plaintiff's Mental Impairments When Making His RFC Determination*

12   Plaintiff argues that the ALJ erred when assessing the medical opinions in the record for
13   purposes of determining plaintiff's mental RFC. Specifically, plaintiff asserts that the ALJ erred
14   in assigning "little weight" to the opinions of Dr. Canty and Dr. Kalman, two of plaintiff's
15   examining psychiatrists.
16   The weight given to medical opinions depends in part on whether they are proffered by
17   treating, examining, or non-examining professionals. Holohan v. Massanari, 246 F.3d 1195,
18   1201-02 (9th Cir. 2001); Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). Ordinarily, more
19   weight is given to the opinion of a treating professional, who has a greater opportunity to know
20   and observe the patient as an individual. Id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir.
21   1996).
22   To evaluate whether an ALJ properly rejected a medical opinion, in addition to
23   considering its source, the court considers whether (1) contradictory opinions are in the record;
24   and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a
25   treating or examining medical professional only for "clear and convincing" reasons. Lester, 81
26   F.3d at 830-31. In contrast, a contradicted opinion of a treating or examining professional may be
27   rejected for "specific and legitimate" reasons. Lester, 81 F.3d at 830. While a treating
28   professional's opinion generally is accorded superior weight, if it is contradicted by a supported

5

examining professional's opinion (supported by different independent clinical findings), the ALJ may resolve the conflict. Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)). The regulations require the ALJ to weigh the contradicted treating physician opinion, Edlund v. Massanari, 253 F.3d 1152, 1157 (9th Cir. 2001), except that the ALJ in any event need not give it any weight if it is conclusory and supported by minimal clinical findings. Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (treating physician's conclusory, minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751. The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional. Lester, 81 F.3d at 831.

          a.      Dr. Canty

Dr. Canty gave plaintiff a psychiatric examination on September 16, 2010, at the Commissioner's request. (AT 317-20.) During this examination, Dr. Canty noted that plaintiff had "significant physical problems," including "chronic pancreatitis and chronic kidney stones." (AT 320.) He also observed that plaintiff had "significant chronic psychosocial stressors" and described "significant neurovegetative symptoms." (Id.) He further noted that plaintiff "doesn't like to be seen by people and doesn't like interacting with them," "isolates [herself] and spends excessive time sleeping," "looked quite depressed," and had a blunted affect. (Id.) Based on these observations, Dr. Canty opined that plaintiff needed "to be referred to professional mental health treatment" and "enter some sort of housing program" because "her psychosocial situation undoubtedly worsens her depression." (Id.) Dr. Canty diagnosed plaintiff with chronic major depression, "severe" psychosocial and environmental problems, and a Global Assessment of Functioning score of 50. (AT 319.) Ultimately, Dr. Canty opined the following:

> [Plaintiff] seems cognitively able to manage money. At this time her depressive symptoms alone would prevent her from working. She would not be able to attend work regularly. She would not be able to concentrate or persist at work activities. She is phobic of people and would not be able to interact with coworkers and supervisors. She is significantly impaired by depression.

(AT 320.) The ALJ gave "little weight" to Dr. Canty's opinion solely because "he limited his

1  opinion to, 'at this time.'" (AT 24.)

2  A determination that the limitations opined by a physician will last at the level of opined severity for fewer than 12 months can constitute a legitimate reason for discounting that physician's opinion. See 42 U.S.C.. § 423(d)(1) (In order to be considered disabled within the meaning of the Act, a claimant must have the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . .has lasted or can be expected to last for a continuous period of not less than 12 months."). However, in this case, the ALJ's reasoning that the mental limitations opined by Dr. Canty were limited in duration was not supported by substantial evidence in the record. Contrary to the ALJ's reasoning, the medical evidence in the record indicates that plaintiff continued to suffer from depression throughout the course of the relevant time period and that her depression remained rather severe.

For instance, plaintiff's treatment notes from the months after Dr. Canty's examination indicate that plaintiff continued to have severe depression, which would worsen at times she encountered psychosocial stressors. (See AT 617 ("[Plaintiff] reports she has continued to be very depressed and her depression has worsened in severity since she found out her SSI application was rejected . . . .")

On December 2, 2011, Dr. Trimble, a clinical psychologist, gave plaintiff a psychiatric examination and determined that plaintiff had no work-related mental limitations. (AT 692-97.) However, the ALJ gave this opinion "little weight" because "Dr. Trimble had little opportunity to review the entire record" and his determination that plaintiff had no limitations was not supported by the record. (AT 24.) Indeed, Dr. Trimble noted in his opinion that he did not review any of plaintiff's psychiatric records when forming his opinion. (AT 692.) Furthermore, Dr. Trimble did not diagnose plaintiff with depression and stated that plaintiff had never been formally diagnosed with depression despite evidence in the record that plaintiff had been previously diagnosed with the condition. (AT 696.) Accordingly, as the ALJ acknowledged in his decision, this opinion does not accurately reflect the existence and severity of plaintiff's mental impairments during the relevant time period.

1       On February 15, 2012, plaintiff engaged in an physical checkup visit with treating nurse
2  practitioner Cherie Cooper, who noted that plaintiff had a history of depression, but that
3  plaintiff's "mood and affect [were] appropriate" during the visit.  (AT 718-19.)  Similarly
4  treatment notes dated December 27, 2012, from plaintiff's primary care clinic briefly stated with
5  regard to plaintiff's psychiatric state that plaintiff did "not appear anxious or withdrawn."  (AT
6  881.)  However, both of these visits were conducted primarily to assess plaintiff's physical
7  impairments rather than her mental impairments.  As such, neither set of notes address plaintiff's
8  psychiatric state beyond observations made at the time the two appointments occurred and do not
9  provide any opinion as to whether plaintiff's depression was improving.  See Lester, 81 F.3d at
10 833 ("Occasional symptom-free periods—and even the sporadic ability to work—are not
11 inconsistent with disability.").

12      On February 1, 2013, fewer than two months prior to the date the ALJ issued his decision,
13 Dr. Kalman, another psychiatrist, gave plaintiff a psychiatric evaluation consisting of a review of
14 plaintiff's medical records, which included the opinions of Dr. Canty and Dr. Trimble, and an
15 independent examination.  (AT 739-49.)  During this examination, Dr. Kalman noted that
16 plaintiff's "mood was depressed" and "affect was constricted."  (AT 741.)  He also noted that
17 plaintiff exhibited "decreased energy" and vegetative signs such as "insomnia, impaired attention,
18 concentration and memory."  (Id.)  In addition to a number of physical ailments, Dr. Kalman
19 diagnosed plaintiff with the following mental impairments:  "Adjustment Disorder, depressed,
20 secondary to medical condition[;] [p]olysubstance dependence in sustained, full remission."  (AT
21 741-42.)

22      Dr. Kalman also provided a medical source statement concerning the nature and severity
23 of plaintiff's mental impairments.  (AT 744-47.)  In this statement, Dr. Kalman opined that
24 plaintiff's mental impairments imposed moderate limitations on plaintiff's ability to carry out
25 detailed instructions, complete a normal workday and workweek without interruptions, perform at
26 a consistent pace without an unreasonable number and length of rest periods, and accept
27 instructions and respond appropriately to criticism from supervisors.  (AT 474-75.)  He further
28 opined that plaintiff was "mildly limited" in her ability to work in coordination with or in

proximity to others without being unduly distracted and to interact appropriately with the general public or customers.  (Id.)

Dr. Kalman determined that certain work-related stressors would increase the severity of plaintiff's mental impairments beyond the limitations he opined.  (AT 746.)  He further found that plaintiff's mental impairments would cause plaintiff to be absent from work 4 days per month and make her unable to complete an 8-hour workday an average of 3 days per month.  (Id.)  He opined that the mental limitations he assessed had lasted at least 12 continuous months and that plaintiff's condition was "not expected to improve significantly within the next 12 months."  (AT 742, 746.)  Finally, Dr. Kalman determined that the earliest date plaintiff's mental impairments could have existed at the severity he assessed was 2005.  (AT 747.)

Based on these records developed during the time between Dr. Canty's opinion and the ALJ's decision, it is clear that plaintiff's depression and the associated symptoms opined by Dr. Canty were not limited to only the time of Dr. Canty's examination.  Dr. Kalman's examination of plaintiff occurred nearly two and a half years after Dr. Canty's examination and Dr. Kalman opined the continued existence of plaintiff's mental impairments and the limitations they imposed on plaintiff's ability to work.  In fact, Dr. Kalman noted that the limitations he assessed had lasted for at least 12 continuous months and that plaintiff's condition was not expected to improve significantly within the 12 months after his opinion.  (AT 742, 746.)[4]

There is a lack of substantial evidence in the record from the time between Dr. Canty's opinion and Dr. Kalman's opinion indicating that plaintiff's mental condition had improved such that Dr. Canty's opinion was limited to only the time he examined plaintiff.  The only evidence indicating plaintiff's mental limitations had improved during the time between these two opinions was the opinion of Dr. Trimble, which the ALJ determined to be of "little weight" due to Dr. Trimble's lack of access to plaintiff's prior mental health records and opinion that plaintiff had no mental limitations despite evidence to the contrary.  (AT 24.)  Accordingly, the ALJ's reasoning that the limitations opined by Dr. Canty were limited to the time of his examination was not

---

[4] While the ALJ gave Dr. Kalman's opinion "little weight," this was done in error for the reasons discussed below.

supported by substantial evidence in the record.

Defendant asserts in her opposition brief that the ALJ's assignment of "little weight" to Dr. Canty's opinion was proper because other evidence in the record contradicted Dr. Canty's opinion. However, the ALJ's decision never provided this additional reason for discounting Dr. Canty's opinion. While the court is permitted to draw reasonable inferences from the ALJ's decision, Magallanes, 881 F.2d at 755, the court cannot consider defendant's post hoc rationalizations. The Ninth Circuit Court of Appeals has repeatedly emphasized that the "bedrock principle of administrative law" is that a "reviewing court can evaluate an agency's decision only on the grounds articulated by the agency." Ceguerra v. Sec'y of Health & Human Servs., 933 F.2d 735, 738 (9th Cir. 1991); see also Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003) (noting that a reviewing court is "constrained to review the reasons the ALJ asserts"). An agency's decision cannot be affirmed on the ground that the agency did not invoke in making its decision. Pinto v. Massanari, 249 F.3d 840, 847-48 (9th Cir. 2001). Here, the ALJ's only stated reason for giving Dr. Canty's opinion "little weight" was because Dr. Canty "limited his opinion to, 'at this time.'" (AT 24.) Accordingly, the court cannot consider defendant's additional reason for why the ALJ's treatment of Dr. Canty's opinion was proper.

In sum, the ALJ's sole reason for discounting Dr. Canty's opinion was not supported by substantial evidence in the record. Accordingly, the ALJ's assignment of "little weight" to Dr. Canty's opinion was in error.

      b.  Dr. Kalman

The ALJ also erred in discounting Dr. Kalman's opinion. The ALJ gave the following reasons for assigning "little weight" to Dr. Kalman's opinion, none of which are supported by substantial evidence in the record:

> [Dr. Kalman's] opinion may have been accurate at the time it was given, but there is little indication that these limitations would extend throughout the alleged period of disability. The claimant's feelings of hopelessness seem to be at least partially related to her social situation and her unsuccessful SSI appeals rather than to her mental impairment. Dire as her social situation may be, a dire social situation is not an impairment. Dr. Kalman's opinion as to "moderate" limitations is not an assessment of specific job functions. Even though Dr. Kalman saw the claimant

only once, he found the claimant to have been disabled for several years. (AT 24.)

With respect to the ALJ's first reason, the evidence in the record actually indicates that the plaintiff's mental impairments and their associated limitations persisted throughout much of the alleged disability period, and at least for a period of more than 12 months.  Indeed, Dr. Kalman himself noted in his opinion, which was based on a review of plaintiff's prior medical records and his own independent psychiatric evaluation, that plaintiff's mental workplace limitations had lasted at least 12 continuous months and were not expected improve within the next 12 months. (AT 742, 746.)  As noted above with respect to Dr. Canty's opinion, there is a lack of substantial evidence in the record indicating that plaintiff's mental impairments caused only temporary limitations lasting fewer than 12 months.  To the contrary, plaintiff's medical record indicates that plaintiff's mental impairment existed with some severity during at least the several years preceding Dr. Kalman's opinion.  (See AT 317-20, 617.)  Therefore, there is a lack of substantial evidence to support this reason for discounting Dr. Kalman's opinion.

The ALJ's second reason, that plaintiff's feeling of hopelessness was partially attributable to plaintiff's social situation rather than to her mental impairments, was not a valid reason for discounting Dr. Kalman's opinion.  Dr. Kalman determined plaintiff's mental limitations based on the effects plaintiff's mental impairments had on her ability to perform work, not based on the limitations imposed by her social situation.  While Dr. Kalman's opinion indicated that plaintiff's mental impairments were potentially exacerbated by plaintiff's social situation, see AT 742 (listing "illness in self," "homelessness," and "inadequate access to health" as part of plaintiff's diagnosis), there is a lack of substantial evidence in the record suggesting that the limitations opined by Dr. Kalman were directly attributable to these social conditions rather than plaintiff's mental impairments.

The ALJ's reasoning that Dr. Kalman did not assess plaintiff's limitations with respect to specific job functions was also unsubstantiated.  Contrary to the ALJ's assertion, Dr. Kalman included a medical source statement concerning the nature and severity of plaintiff's mental impairments as part of his opinion that addressed the effect plaintiff's mental impairments had on

her ability to perform a number of work-related tasks such as interacting with supervisors, coworkers, and the public and carrying out instructions of varying complexity. (AT 744-47.) In fact, Dr. Kalman used an assessment form that "reflect[ed] the four criteria in Social Security Administration regulations concerning the mental ability to do basic work activity" to present his opinion regarding the workplace limitations imposed by plaintiff's mental impairments. (AT 744.)

Finally, the ALJ's determination that Dr. Kalman erroneously found that plaintiff had been disabled for several years based on his one examination also lacks substantial support in the record. As an initial matter, contrary to the ALJ's assertion, Dr. Kalman did not opine that plaintiff was disabled. Rather, he opined that the earliest date from which the limitations Dr. Kalman assessed could have existed at the severity he opined was several years prior to the date of his opinion. (AT 747.) More importantly, the record lacks substantial evidence to support the ALJ's reasoning because Dr. Kalman reviewed plaintiff's prior medical records as part of his examination, which went as far back as 2005 and provided a number of references and opinions regarding the existence of plaintiff's depression and its severity. See Social Security Ruling[5] 83-20, 1983 WL 31249, at *3 ("In some cases, it may be possible, based on the medical evidence to reasonably infer that the onset of a disabling impairment(s) occurred some time prior to the date of the. . . medical examination."). Inferences from the evidence in the record reviewed by Dr. Kalman support his determination that plaintiff's mental impairment and its associated symptoms could have existed at the assessed severity as early as 2005. Accordingly, the ALJ's determination that Dr. Kalman's opinion was entitled to reduced weight on the basis that it opined an onset date for plaintiff's limitations that was several years prior to Dr. Kalman's examination lacks substantial support in the record.

////

---

[5] The Secretary issues Social Security Rulings to clarify the Secretary's regulations and policy." Bunnell v. Sullivan, 947 F.2d 341, 346 n.3 (9th Cir. 1991). Although "SSRs do not carry the 'force of law,' . . . they are binding on ALJs nonetheless." Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1224 (9th Cir. 2009) (citation omitted). Courts will "defer to [SSRs] unless they are plainly erroneous or inconsistent with the Act or regulations." Quang Van Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989).

Because all of the ALJ's reasons for discounting Dr. Kalman's opinion lack substantial support from the record, his treatment of this opinion was in error.

### 2. *The ALJ's Errors Were Not Harmless; Therefore, Remand is Warranted for Reconsideration of the Opinions of Dr. Canty and Dr. Kalman*

Because the court finds that the ALJ erred in failing to credit or properly reject the opinions of Dr. Canty and Dr. Kalman, it must next determine whether that error was harmless. See Curry v. Sullivan, 925 F.2d 1127, 1129 (9th Cir. 1990) (harmless error analysis applicable in judicial review of social security cases). Both Dr. Canty and Dr. Kalman opined limitations stemming from plaintiff's mental impairments that were more severe than those determined by the ALJ. Had the ALJ properly considered their opinions, plaintiff's RFC concerning her mental limitations may have been materially different from that determined by the ALJ on the basis of his erroneous analysis. Moreover, the ALJ's improper consideration of these two opinions could have impacted the ALJ's Step Five consideration. DeLorme v. Sullivan, 924 F.2d 841, 850 (9th Cir. 1991) ("If the hypothetical does not reflect all the claimant's limitations, we have held that the [vocational] expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy. . . . [F]ailure to include [a] mental impairment would of itself require remand for reconsideration . . . ."). Accordingly, the court finds that the ALJ's errors were not harmless, thus warranting remand.

Nonetheless, the court expresses no opinion at this time as to what weight the ALJ should assign to these two opinions on remand. The ALJ is free to reassess these opinions as he sees fit, provided that his reasoning is based on proper legal standards and supported by substantial evidence in the record. The ALJ is also free to further develop the record with regard to these two opinions if it is determined that such development will aid the ALJ in his reevaluation.

While plaintiff argues that the court should remand this case for payment of benefits, the court declines to do so because such an award is only appropriate where "no useful purpose would be served by further administrative proceedings," "the record has been thoroughly developed," and "there are no outstanding issues that must be resolved before a proper disability determination can be made." Varney v. Sec'y of Health & Human Servs., 859 F.2d 1396, 1399,

1401 (9th Cir. 1988). As a general rule, remand is warranted where additional administrative proceedings could remedy defects in the Commissioner's decision. See Harman v. Apfel, 211 F.3d 1172, 1179 (9th Cir. 2000), cert. denied, 531 U.S. 1038 (2000); Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984). In this case, remand is appropriate to reconsider the opinions of Dr. Canty and Dr. Kalman for the reasons noted above. The ALJ is instructed to take whatever further action is deemed appropriate and consistent with this decision. On remand, the ALJ is also free to develop the record in other respects, if deemed appropriate.

        3.    *Other Issues*

In light of the court's conclusion that the case must be remanded for further analysis of the opinions of Dr. Canty and Dr. Kalman, the court declines to reach the remaining issues presented by plaintiff. Specifically, the court provides no opinion at this time regarding whether the ALJ failed to properly consider plaintiff's headaches, Dr. Sanchez's opinion, and plaintiff's testimony when assessing plaintiff's RFC, or whether the ALJ erred at Step Five by posing an improper hypothetical to the VE. Nevertheless, the ALJ is free to reevaluate his analysis with respect to any or all of these additional issues. On remand, the ALJ will have an opportunity to further consider these issues and address the medical evidence in the record and plaintiff's testimony in context of the record as a whole.

V.    CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that:

1.    Plaintiff's motion for summary judgment (ECF No. 15) is GRANTED IN PART.

2.    The Commissioner's cross-motion for summary judgment (ECF No. 16) is DENIED.

3.    The action is remanded for further proceedings consistent with this order pursuant to sentence four of 42 U.S.C. § 405(g).

4.    Judgment is entered for plaintiff.

IT IS SO ORDERED.

Dated: March 16, 2015

*/s/ Kendall J. Newman*
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE